IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

---

JEFFREY JOHLL,

                      Plaintiff,                      OPINION & ORDER

    v.

                                                                       13-cv-630-jdp

CAROLYN W. COLVIN,
Acting Commissioner of Social Security,

                      Defendant.

---

      Plaintiff Jeffrey Johll seeks judicial review of a final decision of the Acting Commissioner of Social Security finding him not disabled within the meaning of the Social Security Act. Plaintiff contends, principally, that remand is warranted because the Administrative Law Judge (ALJ): (1) improperly analyzed the medical opinion evidence in his case; and (2) incorrectly assessed the credibility of plaintiff's testimony regarding his impairments. The court agrees that the ALJ's analysis of the medical opinions is deficient and will therefore remand the case to the Commissioner for further proceedings.

BACKGROUND

      Unless otherwise noted, the court draws the following procedural and factual background from the ALJ's written opinion. Where appropriate, the court cites to the Administrative Record, Dkt. 7, to supply additional relevant information.

      Plaintiff was 44 years old at the time of the ALJ's decision. On March 31, 2011, he applied for disability insurance benefits, alleging a disability beginning on December 19, 2008. Plaintiff later amended his onset date to September 30, 2009. Plaintiff's application was denied both initially and again on reconsideration. After reconsideration, but before a hearing in front of an ALJ, plaintiff's case was selected for an "informal remand" to a disability hearing unit

(DHU) to determine whether to award benefits.[1] Dkt. 18, at 5-6. The DHU did not decide to award benefits and plaintiff's case continued to a hearing before ALJ William Spalo.

In his application, plaintiff alleged a disability due to several conditions. R. 188. Of the conditions alleged, the ALJ concluded that plaintiff suffered from the following severe impairments: diabetes mellitus; venous stasis in both lower extremities; chronic obstructive pulmonary disease (COPD); obesity; and hypertension. The ALJ found that plaintiff's complaints of sleep apnea and depression did not produce more than mild symptoms and that these conditions did not impose any work-related limitations on plaintiff.

The earliest medical record in this case is a pulmonary rehabilitation discharge report from Grant Regional Health Center, in Lancaster, Wisconsin. The report, dated May 27, 2009, indicates that plaintiff entered a rehabilitation program with two goals: to breathe better and to lose weight. Plaintiff was employed full-time during his rehabilitation and did not have to miss any sessions or any work due to pulmonary illness. Treatment notes from throughout 2010 confirm that plaintiff suffered from COPD, deep vein thrombosis, and hypertension. Plaintiff also has a history of struggling with his weight. He is 6'2" tall and, at the hearing before the ALJ, plaintiff testified that he weighed 379 pounds. There are several notes in the medical record confirming that health care professionals have urged plaintiff to use diet, exercise, and weight-loss programs to help manage his obesity.

Since 2009, plaintiff received most of his medical care from Brian A. Quick, PA-C, a physician's assistant at the Lancaster Family Medical Center. Some of plaintiff's records also contain notations from Robert Stader, MD, a doctor at the clinic. Although most of plaintiff's

---

[1] The Commissioner explains this procedure in her brief. The "informal remand" allows a DHU to determine whether the record establishes that a claimant is entitled to a fully favorable decision. If the DHU does *not* make such a determination, the case continues to a hearing before an ALJ.

2

records are signed only by Mr. Quick, plaintiff testified that Dr. Stader was his primary physician. R. 61-62. With his application, plaintiff submitted a "Treating Medical Source Statement" in the form of a questionnaire, which asked Dr. Stader and Mr. Quick to indicate the work-related limitations plaintiff's condition caused him. Only Mr. Quick's signature appears on the statement, but Dr. Stader's name is printed in the signature block. R. 397. The statement imposes the following limitations on plaintiff: (1) lift 20 pounds occasionally; (2) lift 10 pounds frequently; (3) stand and walk less than two hours in an eight-hour day; (4) sit less than two hours in an eight-hour day; and (5) never twist, bend, crouch, or climb. R. 395-96.

Three state agency consultants reviewed plaintiff's medical records and offered opinions as to his functional limitations. The first reviewer, Syd Foster, DO, indicated that plaintiff had a number of medical conditions, but that medication appeared to keep each of them under control. Dr. Foster opined that plaintiff would require the following limitations: (1) lift 10 pounds occasionally; (2) lift 10 pounds frequently; (3) stand and walk for two hours in an eight-hour day; (4) sit for about six hours in an eight-hour day; and (5) never climb. R. 354-55. Mina Khorshidi, MD, the second consultant, affirmed Dr. Foster's assessment as written.

The third consultant, Nancy Armstrong, MD, reviewed plaintiff's records as part of the "informal remand." The section of Dr. Armstrong's report devoted to plaintiff's physical limitations contains internal inconsistencies. The section is three paragraphs long. The first paragraph concludes by recommending a fully favorable decision because of plaintiff's less than sedentary residual functional capacity (RFC). The second and third paragraphs, however, conclude by stating that the evidence "does not support a less than sedentary RFC prior to [plaintiff's] presentation on 9/21/2011." R. 539. Although it appears that Dr. Armstrong did not write the first portion of the report, the ALJ attributed the entire document to her.

The ALJ held a hearing on October 15, 2012. Plaintiff was present, with counsel, as was Emily M. Veith, a neutral vocational expert (VE). Plaintiff's medical records were accepted into evidence without objection, and the ALJ heard testimony from plaintiff and the VE. Plaintiff testified that, due to his edema, he is unable to work because he cannot stand on his feet or sit for very long without needing to elevate his legs. R. 58. Plaintiff also explained that the medication he took for some of his health conditions caused him to need to use the bathroom frequently. *Id.* Finally, plaintiff told the ALJ that his pulmonary issues prevented him from walking and lifting. R. 59. When the ALJ asked about plaintiff's daily activities, he testified that he lives alone in a three-story house, is able to climb stairs with loads of laundry, and is able to cook and care for himself. R. 61-62, 72. The VE testified that plaintiff could not perform any past relevant work as a cook, warehouse worker, mail clerk, or department manager, but that there would be other jobs available to a person with his limitations. R. 76.

The ALJ issued a written opinion on October 23, 2012, concluding that plaintiff was not disabled within the meaning of the Social Security Act. The ALJ began by summarizing the relevant medical evidence and discussing plaintiff's credibility. As a result of plaintiff's impairments, the ALJ found him to have the RFC to perform less than the full range of sedentary work. Plaintiff could not climb ladders, ropes, or scaffolds, and had to avoid even moderate exposure to moving machinery and unprotected heights. In reaching this conclusion, the ALJ found plaintiff's subjective complaints to be less than credible because they were contradicted by the medical record and inconsistent with his own reported daily activities. The ALJ also weighed the medical opinions in plaintiff's case, assigning "great weight" to Dr. Foster's and Dr. Khorshidi's assessments, but giving "little weight" to Mr. Quick's assessment because the physician's assistant was not an "acceptable medical source," and "little weight" to Dr. Armstrong's assessment because it was inconsistent with the record.

4

After the Appeals Council denied review, the ALJ's decision became the final determination of the Commissioner and plaintiff filed a timely complaint seeking judicial review of the ALJ's decision pursuant to 42 U.S.C. § 405(g).

OPINION

When a federal court reviews a final decision by the Commissioner of Social Security, the Commissioner's findings of fact are "conclusive" so long as they are supported by "substantial evidence." 42 U.S.C. § 405(g). Substantial evidence means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971). When reviewing the Commissioner's findings under § 405(g), the court cannot reconsider facts, re-weigh the evidence, decide questions of credibility, or otherwise substitute its own judgment for that of the ALJ. *Clifford v. Apfel*, 227 F.3d 863, 869 (7th Cir. 2000). Even so, a district court may not simply "rubber-stamp" the Commissioner's decision. *See Ehrhart v. Sec'y of Health & Human Servs.*, 969 F.2d 534, 538 (7th Cir. 1992). Rather, "the court must conduct a critical review of the evidence before affirming the [C]ommissioner's decision, and the decision cannot stand if it lacks evidentiary support or is so poorly articulated as to prevent meaningful review." *Hemminger v. Astrue*, 590 F. Supp. 2d 1073, 1079 (W.D. Wis. 2008) (internal citations omitted). To provide the necessary support for a decision to deny benefits, the ALJ must "build an accurate and logical bridge from the evidence to [his] conclusion." *Zurawski v. Halter*, 245 F.3d 881, 887 (7th Cir. 2001).

After reviewing the record, the court concludes that the ALJ erred in analyzing the medical opinions in this case and that remand is therefore warranted. Because a new evaluation of the medical opinions may affect the ALJ's credibility determination, the court recommends that the ALJ revisit this issue on remand.

**A. The ALJ did not properly evaluate the medical opinions in this case.**

Social Security regulations assure claimants that "[i]n determining whether you are disabled, we will always consider the medical opinions in your case record together with the rest of the relevant evidence we receive." 20 C.F.R. § 404.1527(b). In general, an "ALJ must give substantial weight to the medical evidence and opinions submitted, unless specific, legitimate reasons constituting good cause are shown for rejecting it." *Knight v. Chater*, 55 F.3d 309, 313 (7th Cir. 1995); *see also* SSR 96-6p. Here, plaintiff identifies two errors in the ALJ's analysis of the medical opinions in this case. First, plaintiff contends that the ALJ failed to attribute Mr. Quick's report to *both* the physician's assistant and to Dr. Stader, and therefore failed to evaluate the opinion as one from a treating source. Second, plaintiff contends that the ALJ did not give adequate reasons for discounting Dr. Armstrong's opinion.

### 1. Mr. Quick's report

Plaintiff argues that the ALJ should have attributed the treating source statement to *both* Mr. Quick and Dr. Stader, and that by failing to do so, the ALJ's analysis of the statement is deficient. The record contains limited evidence of Dr. Stader's involvement in plaintiff's treatment history. In fact, of the 21 relevant medical records from plaintiff's visits to the Lancaster Family Medical Center, only three bear Dr. Stader's electronic signature. R. 284, 577-81, 601. The Commissioner argues that plaintiff has therefore failed to demonstrate that Dr. Stader qualified as a treating source under 20 C.F.R. § 404.1502 because it is unclear whether the doctor "has, or has had, an ongoing treatment relationship with" plaintiff. But the Commissioner overlooks two critical facts: (1) plaintiff *testified* that Dr. Stader was his primary care provider, R. 61-62; and (2) the "Treating Medical Source Statement" which plaintiff

6

submitted bears Dr. Stader's printed name in the signature block, R. 397. The conflicting information about Dr. Stader's involvement was sufficient to trigger the ALJ's duty to seek additional information. *See Nelms v. Astrue*, 553 F.3d 1093, 1098 (7th Cir. 2009) ("[T]he ALJ in a Social Security hearing has a duty to develop a full and fair record."); *Simms v. Astrue*, 599 F. Supp. 2d 988, 1003 (N.D. Ind. 2009) ("The regulations provide that an ALJ will seek additional evidence or clarification from a medical source when the report from that source contains conflict or ambiguities that must be resolved or when the report does not contain all the necessary information."); 20 C.F.R. § 404.1512(d). But the ALJ did not seek clarification and did not explain why the statement should not be attributed to Dr. Stader as well.

By itself, the ALJ's error does not require remand. *See David v. Barnhart*, 446 F. Supp. 2d 860, 873 (N.D. Ill. 2006) (finding that a mistaken attribution was "not a harmful error as there were other significant inconsistencies in the record that justified the ALJ's refusal to give the treating physician's opinion controlling weight"); *cf. Mandella v. Astrue*, 820 F. Supp. 2d 911, 929 (E.D. Wis. 2011) ("[I]t was error for the ALJ to rely on the notes from a doctor who saw [a claimant] only one time and then to attribute that assessment to" another treating physician to use for purposes of showing inconsistency and assigning less weight). But the ALJ wrote that he gave the assessment little weight *because* he believed it came from a non-acceptable medical source. R. 21. Thus, the potential misattribution was not harmless in this case. Remand is necessary so that the ALJ can determine whose opinion the statement contains and then evaluate it accordingly.

As a practical matter, even if the ALJ properly determined that the opinion belonged only to Mr. Quick, he would have *still* needed to use the 20 C.F.R. § 404.1527(c) factors to discuss what weight he assigned the opinion. *See* SSR 06-03p ("Although the factors in 20 CFR 404.1527(d) and 416.927(d) explicitly apply only to the evaluation of medical opinions from

'acceptable medical sources,' . . . . These factors represent basic principles that apply to the consideration of all opinions from medical sources who are not 'acceptable medical sources.'"). The failure to discuss relevant § 1527(c) factors, even in the context of a non-acceptable medical source, is itself a deficiency that warrants remand. *Thompson v. Colvin*, No. 12-cv-375, 2014 WL 1371290, at *6-7 (W.D. Wis. Apr. 8, 2014); *see also Campbell v. Astrue*, 627 F.3d 299, 308 (7th Cir. 2010). Here, the ALJ discredited plaintiff's treating source statement because it was inconsistent with Mr. Quick's own treatment notes, the medical advice of another doctor, and plaintiff's reports on his daily activities. Although the ALJ gave specific examples of plaintiff's inconsistent daily activities, he did not specify which of Mr. Quick's treatment notes conflicted with the statement's proposed limitations. Moreover, the ALJ did not confront the fact that Mr. Quick is the only health care provider in the record who has had an ongoing treatment relationship with plaintiff—one of the factors that points toward assigning his opinion *more* weight. 20 C.F.R. § 404.1527(c)(2)(i). Without some recognition and discussion of the factors that support giving weight to the opinion, the ALJ cannot build a "logical bridge" to his conclusions and satisfy the court that he has undertaken the detailed analysis which the regulations require of him.

On remand, the ALJ must first determine whether the statement is attributable to Dr. Stader. If so, he must consider whether to assign controlling weight to the opinion. If controlling weight is not appropriate, or if the statement truly belongs only to Mr. Quick, then the ALJ must use the § 1527(c) factors to weigh the opinion. The ALJ should identify the factors that support giving the opinion higher weight and provide specific citations to the record if he concludes that the opinion is inconsistent with other medical evidence.

## 2. Dr. Armstrong's report

The second error plaintiff identifies is that the ALJ did not give adequate reasons for discounting Dr. Armstrong's recommendation that plaintiff receive a fully favorable decision and be limited to less than sedentary work.[2] The ALJ gave little weight to Dr. Armstrong's opinion because "[h]er conclusion that the claimant is disabled is a determination reserved to the Commissioner (SSR 96-05p). Furthermore, her conclusion that the claimant's condition was radically worse as of September 2011 is inconsistent with the record." R. 22. In support of this finding, the ALJ cited evidence in the record that contradicted Dr. Armstrong's recommendation, including the fact that plaintiff was able to help someone move a refrigerator in January 2012, and that plaintiff continues to prepare his own meals, drive a car, and do housework. *Id.* As with the ALJ's analysis of Mr. Quick's opinion, this brief discussion is deficient because it fails to recognize the factors that may support giving Dr. Armstrong's opinion more weight. The deficiency prevents the ALJ from building a "logical bridge" between the evidence and his conclusions about Dr. Armstrong's opinion.

The ALJ was correct that, under 20 C.F.R. § 404.1527(d), the Commissioner retains the ultimate responsibility for determining a claimant's RFC and whether the person is disabled. But neither the regulation nor the supporting Social Security Rulings permit the ALJ to disregard an opinion in its entirety simply because the author offers a conclusion on an issue reserved to the Commissioner. Quite the opposite, SSR 96-5p expressly requires ALJs to "always carefully consider medical source opinions about any issue, including opinions about issues that are reserved to the Commissioner." It is unclear from the ALJ's opinion whether he disregarded only

---

[2] The ALJ attributed the whole report to Dr. Armstrong, but the Commissioner highlights internal inconsistencies in the document which suggest that she did *not* write the entire report, particularly the paragraph recommending a fully favorable decision. The ALJ is free to revisit this factual question on remand and then determine what effect, if any, the report's true authorship has on the overall weight it receives.

Dr. Armstrong's specific RFC finding or whether the ALJ went further and used the fact that Dr. Armstrong offered such a finding as a reason to discredit her overall opinion. The former would be appropriate; the latter would not.

Even assuming that the ALJ properly handled Dr. Armstrong's RFC finding, the remaining analysis is still deficient. In her report, Dr. Armstrong highlighted significant limitations on plaintiff's daily life that are caused by his health conditions. She noted that plaintiff could not walk up a flight of stairs with a 25-30 pound load without getting out of breath and that he has difficulty standing and walking for extended periods. R. 539. Dr. Armstrong also wrote, however, that plaintiff could complete household tasks and that his edema and venous stasis were under control. *Id.* If the ALJ had questions about how Dr. Armstrong could recommend a less than sedentary RFC in spite of plaintiff's activities, then he had an obligation to contact her for a more complete opinion. *See Barnett v. Barnhart*, 381 F.3d 664, 669 (7th Cir. 2004) ("[A]lthough a medical opinion on an ultimate issue such as whether the claimant is disabled is not entitled to controlling weight, the ALJ must consider the opinion and should recontact the doctor for clarification if necessary."). But the ALJ did not contact Dr. Armstrong. Instead, he proceeded to evaluate her opinion with the available evidence. Specifically, the ALJ discredited the opinion by noting that it was "inconsistent with the record" and by observing that many of plaintiff's daily activities contradicted the limitations in Dr. Armstrong's report. This discussion begins to provide the necessary analysis, but is ultimately too thin to support the ALJ's decision because it fails to identify and confront the reasons for giving Dr. Armstrong's opinion more weight.

The same § 1527(c) factors must guide the ALJ's analysis of Dr. Armstrong's opinion. Here, the ALJ addressed only one of these—consistency—but overlooked other relevant factors. For example, Dr. Armstrong concluded that plaintiff suffered from hypertension and could not

10

lift very much, and she cited records of office visits to support her opinion that these conditions imposed significant limitations on plaintiff. R. 539. Dr. Armstrong is a state agency consultant, a class of professionals that SSR 96-6p describes as "highly qualified physicians and psychologists who are experts in the evaluation of the medical issues in disability claims under the [Social Security] Act." Because supportability, specialization, and familiarity with Social Security disability programs are also among the list of factors which ALJs must use to consider medical opinions, the ALJ should have at least identified these as reasons to afford Dr. Armstrong's opinion higher weight. On remand, the ALJ must extend his discussion to each applicable factor, cite specific contradictory evidence, and more thoroughly explain his ultimate conclusion as to the weight Dr. Armstrong's opinion deserves. The court does not express an opinion as to what result the § 1527(c) factors require in this case, leaving that determination entirely to the ALJ.

**B. After reanalyzing the medical opinions, the ALJ should revisit his credibility determination.**

Plaintiff's remaining argument is that the ALJ erred in finding him less than credible. Having already found legitimate grounds for remand, the court need not address this issue in great detail. *See Scott v. Astrue*, 647 F.3d 734, 741 (7th Cir. 2011) ("These flaws are enough to require us to remand [and w]e therefore needn't decide whether the reasons the ALJ gave in support of her adverse credibility finding . . . were so 'patently wrong' as to separately require remand.") (internal citations omitted). Because proper analysis of the medical opinions in this case may affect plaintiff's credibility, however, the court will offer some guidance.

In reviewing an ALJ's decision, the court ordinarily affords credibility determinations considerable deference and upholds them if the ALJ gives "specific reasons for the finding that

11

are supported by substantial evidence." *Moss v. Astrue*, 555 F.3d 556, 561 (7th Cir. 2009); *see also* SSR 96-7p ("[T]he adjudicator must consider the entire case record and give specific reasons for the weight given to the individual's statements."). The court will reverse a "determination only if it is so lacking in explanation or support that [it is] 'patently wrong.'" *Simila v. Astrue*, 573 F.3d 503, 517 (7th Cir. 2009) (internal citations omitted). In this case, the ALJ identified three reasons for finding plaintiff to be less than credible: (1) plaintiff's daily activities contradicted his statements about his limitations; (2) plaintiff has not been compliant with his medical treatment over the past few years; and (3) plaintiff received unemployment compensation throughout the relevant time period. R. 20-21. Contrary to plaintiff's assertion, this analysis provides "specific reasons" for the ALJ's adverse credibility determination.

An ALJ must consider a claimant's daily activities in assessing his credibility, 20 C.F.R. § 404.1529(c)(3)(i), but the Seventh Circuit has held that ALJs must do more than simply list the daily activities that contradict subjective reports of physical limitations. *See Clifford*, 227 F.3d at 872 ("[M]inimal daily activities . . . do not establish that a person is capable of engaging in substantial physical activity."). Here, the ALJ met this heightened requirement. For example, he observed that plaintiff was able to sit in the hearing room for over an hour without needing to elevate his legs and that no treatment notes ever directed plaintiff to elevate his legs daily, both of which contradicted plaintiff's own summary of his limitations. *See Powers v. Apfel*, 207 F.3d 431, 436 (7th Cir. 2000) ("[W]e have repeatedly endorsed the role of observation in determining credibility . . . . The hearing officer had an opportunity to observe [the claimant] for an extended period of time and could gauge whether her demeanor, behavior, attitude and other characteristics suggested frankness and honesty.") (internal citations omitted). The ALJ also noted that plaintiff was able to go up and down the stairs in his own house to use the

bathroom, do laundry, cook, and perform basic chores.[3] R. 20-21. The ALJ concluded that these activities undermined plaintiff's claims on the limits of his physical capacity, but nevertheless accounted for plaintiff's difficulty lifting 25-30 pounds in the final RFC.

The ALJ also properly relied on plaintiff's failure to seek and comply with treatment directions for his various physical conditions. Plaintiff has resisted home blood sugar testing and has not demonstrated a sustained effort to lose weight, despite repeated urging to do so from his doctors. R. 20-21. The ALJ was free to use this information in making his credibility determination, but on remand, the ALJ should bolster his discussion with specific citations to the medical record where doctors recommended treatment that plaintiff refused. *See Castile v. Astrue*, 617 F.3d 923, 930 (7th Cir. 2010) ("The ALJ also found it particularly instructive that Castile either refused or utterly failed to adhere to the treatment programs prescribed by her physicians.").

Lastly, the ALJ correctly considered plaintiff's receipt of unemployment benefits as "one of many factors adversely impacting his credibility." *Schmidt v. Barnhart*, 395 F.3d 737, 746 (7th Cir. 2005). The ALJ commented that, as part of plaintiff's application for unemployment benefits, "he was certifying to the state that he was able to work throughout this period despite telling the federal government that he was totally disabled." R. 21. A claimant need not choose between unemployment benefits and social security benefits, and an ALJ may "give some consideration to [an applicant's pursuit of unemployment compensation] when assessing his

---

[3] The ALJ also observed that plaintiff helped a friend move a refrigerator in 2012, after his alleged onset date. Plaintiff protests that the ALJ overstated the physical exertion required during this incident and omitted the fact that plaintiff fell and injured himself while helping his friend. Dkt. 10, at 14. Although the ALJ's opinion omits any discussion of plaintiff's fall, it recounts plaintiff's testimony that the refrigerator was on a dolly. R. 20. On remand, the ALJ may want to clarify his understanding of the incident, but the court notes that the ALJ provided other, sufficient justifications for his credibility determination, and so this minor oversight is relatively insignificant.

13

credibility . . . . But attributing a lack of credibility to such action is a step that must be taken with significant care and circumspection. All of the surrounding facts must be carefully considered." *Scrogham v. Colvin*, No. 13-3601, 2014 WL 4211051, at *12 (7th Cir. Aug. 27, 2014). In this case, the ALJ regarded plaintiff's claim for unemployment benefits as just *one* of many reasons for finding his testimony less than credible. On remand, the ALJ can strengthen his analysis by delving into the reasons why plaintiff sought unemployment benefits and by clarifying whether plaintiff, in fact, felt that he could work during the relevant time period. The mere mention of unemployment benefits does not, however, render the ALJ's credibility determination "patently wrong."

As discussed above, the court will remand this case for further analysis of the medical opinions in the record. Thus, although the ALJ gave specific reasons for his credibility determination, additional analysis of the medical evidence may require a reevaluation of plaintiff's credibility. If, on remand, the ALJ decides to give more weight to Dr. Armstrong's opinion or to attribute the treating source statement to Dr. Stader, then the ALJ must determine what effect these opinions have on plaintiff's subjective reports of his limitations.

ORDER

IT IS ORDERED that the decision of defendant Carolyn W. Colvin, Acting Commissioner of Social Security, denying plaintiff Jeffrey Johll's application for disability benefits is REVERSED AND REMANDED under sentence four of 42 U.S.C. § 405(g) for further proceedings consistent with this opinion. The clerk of court is directed to enter judgment

for plaintiff and close this case.

    Entered this 18th day of September, 2014.

                                   BY THE COURT:
                                   /s/
                                   JAMES D. PETERSON
                                   District Judge